KNOLL, Judge.
Linda Austin appeals suspensively from a judgment in favor of the plaintiff, Housing Authority of the City of New Iberia (hereafter Housing Authority), evicting her from a public housing authority apartment for nonpayment of rent. Austin contends the trial court erred: (1) in failing to comply with federal regulations which protect a tenant’s right to continued occupancy by requiring a housing authority to show good cause before terminating a tenant’s lease; (2) in finding that she failed to pay her rent when the evidence clearly showed that pri- or to the institution of eviction proceedings she attempted to tender the full balance owed Housing Authority plus an additional $60 for future rent payments; and (3) in failing to give sufficient weight to the mitigating factors surrounding her inability to pay her rent promptly. The crucial issue is whether Austin’s failure to comply with federal grievance procedures constitutes a waiver of her right to continued occupancy. We affirm.
FACTS
Austin resides in a public housing apartment with her three teenage children. She has been a tenant of Housing Authority since April 1977, approximately eight years. Austin normally paid her rent promptly until January 1984 when she was unable to make her rent payment due to her ex-husband’s failure to pay child support. Her only source of income was the child support payments. Austin is unemployed, and was a welfare recipient prior to the judgment ordering her ex-husband to pay child support.
On April 19, 1984, Housing Authority sent Austin by certified mail a notice of termination of her lease due to failure to pay rent of $128 for the months of January, February, March and April, and failure to pay utility charges of $63.95 and a $2 miscellaneous charge; her total amount past due was $193.95. The notice further instructed Austin to request, either orally or in writing, an informal conference within five days of the notice (by April 27, 1984). Austin is literate and has a telephone. She neither called nor wrote Housing Authority to request a conference within the five-day period. She admits receiving Housing Authority’s notice on April 20,1984. She read the instructions concerning requests for hearings, but contends she was not well enough to go to Housing Authority’s office.
On May 7, 1984, three days before filing of the eviction proceedings, Austin met with Dolph Frantz, executive director of Housing Authority, and presented a check for $193.95 from the Mt. Calvary Baptist Church account to cover her total amount due and a $60 check from the Social Service Center as an advance on future rental payments. She explained that the delay was due to her ex-husband’s failure to pay child support, her recent illness, and the delay involved in processing her new application for welfare benefits.
*1014 Housing Authority filed a rule to show cause why Austin should not be evicted from its premises for nonpayment of rent. After a hearing, the city judge made the rule absolute.
TERMINATION OF PHA LEASE
The federal regulations governing termination of a public housing authority (PHA) lease are provided in 24 C.F.R. § 966.4(1) as follows:

“(l) Termination of the lease. The lease shall set forth the procedures to be followed by the PHA and by the' tenant in terminating the lease which shall provide:

(1) That the PHA shall not terminate or refuse to renew the lease other than for serious or repeated violation of material terms of the lease such as failure to .make payments due under the lease or to fulfill the tenant obligations set forth in § 966.4(f) or for other good cause.

(2) That the PHA shall give written notice of termination of the lease of:

(i) 14 days in the case of failure to pay rent;

(ii) A reasonable time commensurate with the exigencies of the situation in the case of creation or maintenance of a threat to the health or safety of other tenants or PHA employees; and

(Hi) 30 days in all other cases.

(3) That the notice of termination to the tenant shall state reasons for the termination, shall inform the tenant of his right to make such reply as he may wish and of his right to request a hearing in accordance with the PHA’s grievance procedure. ”
PHA tenants are obligated to abide by necessary and reasonable regulations promulgated by the PHA. 24 C.F.R. § 966.4(f)(4). The regulations further provide that all disputes concerning the obligations of PHA tenants shall be resolved in accordance with the PHA grievance procedures. 24 C.F.R. § 966.4(m). If the complainant does not request a hearing in accordance with the regulations, then the PHA’s disposition of the grievance shall become final. However, failure to request a hearing shall not constitute a waiver by the complainant of his right thereafter to contest the PHA’s action in disposing of the complaint in an appropriate judicial proceeding. 24 C.F.R. § 966.55(c).
The purposes of public housing for the poor are implicit in the construction of leases for such housing. In order to evict a tenant occupying public housing for persons with low incomes for failure to pay rent as called for in the lease, there must be a finding of fault on the part of the tenant in failing to make the rental payment. Upon a showing by the Authority that the rental payment was not made as required by the lease, it is presumed that the failure to pay rent is good cause for eviction. The burden, therefore, shifts to the tenant to produce evidence to prove a lack of fault on his part in failing to make the rental payment. Maxton Housing Authority v. McLean, 313 N.C. 277, 328 S.E.2d 290 (1985).
In the instant case, Housing Authority presented evidence at the eviction hearing of Austin’s failure to pay her rent for four consecutive months and her failure to contact Housing Authority concerning the past due rent. Upon this showing, it is. presumed that the failure to pay rent is good cause for eviction. Maxton Housing Authority v. McLean, supra. Hence the burden shifts to Austin to show a lack of fault on her part in failing to make the rental payments. While we cannot find Austin at fault for her ex-husband’s failure to make his child support payments, we do find her at fault in failing to follow the federal grievance procedures. Austin is literate and acknowledges having received notice of her lease termination, with clear instructions regarding grievance procedures. The notice of April 19, 1984, provided in pertinent part:

“Pursuant to federal regulations, you may present any grievance to the office of the Housing Authority of the City of New Iberia and request an informal conference.

*1015
You must request either orally or in writing the informal conference within five (5) days of this notice April 27,198⅛. (Last date)

If no request for an informal conference is received, this notice will be considered as your final notice to vacate. ”

The record clearly reflects that Austin made no effort to call or write Housing Authority within the five days to explain her situation. She testified as follows:

“QUESTION: And, can you read and write?

ANSWER: Yeah, I can read and write.

QUESTION: Do you have a telephone?

ANSWER: Yes, I have a telephone.

QUESTION: And you admit that you received this letter from the Housing Authority on April the 20th?

ANSWER: Yes.

QUESTION: And you admit that you can read, that it says that you must come in within 5 days?

ANSWER: Yes, I sure did read it. QUESTION: And you did not go in within 5 days?

ANSWER: No, because I wasn’t well enough to go.

QUESTION: And you didn’t send your good friend in within 5 days?

ANSWER: Well, she, I, don’t put her in that kind of business. Her name is not on my lease.

QUESTION: And you didn’t send your teenage children in there ...?

ANSWER: No, because they can’t handle Mr. Frantz.

QUESTION: And you didn’t write a note to Mr. Frantz and have it even delivered?

ANSWER: No, I sure didn’t. I sure didn’t.

⅜ Sfc ⅝ ⅝

BONIN: You didn’t call him on the telephone or even ask him for an extension, did you?

ANSWER: No, because he doesn’t know how to talk to to people any way. ”

The record is clear that Austin had knowledge of the procedural requirements. The federal regulations clearly obligate PHA tenants to abide by necessary and reasonable regulations promulgated by the PHA. See 24 C.F.R. § 966.4(f)(4). Although we sympathize with Austin’s misfortune, the record neither supports nor justifies her failure to comply with federal regulations. We recognize Austin’s entitlement to continued occupancy, however, this is conditional. She was afforded all of her procedural protections, but Austin neglected to comply with the grievance procedures promulgated by PHA, despite having received adequate notice of the grievance procedures. Since federal regulations place a duty on PHA tenants to comply with reasonable and necessary regulations, we must determine whether Housing Authority’s requirement that Austin request a hearing within five days is necessary and reasonable. The trial court stated in its reasons for judgment:
“In this particular case, it appears from the letter that Ms. Austin has been delinquent since January. According to what we have in evidence, placed into evidence with us. In fact, for the months of January, February, March and April, it seems that over the time period that some time in March at least a letter was sent, I don’t know if there was any evidence that she received the letter, but she certainly knew that there was, that she was delinquent, having been a tenant for all these years. As I understand from the testimony that I heard, that a moratirum [sic] was granted on everyone with the opportunity to come back and pay without any recourse until April 18, this particular time was given, for all the tenants and they were notified that they could come in and pay and no eviction proceedings would be started. I see no evidence where Ms. Austin made any attempt to do that.... I think the moratorium goes to show the good faith effort that the Housing Authroity [sic] made. And these particular procedures don’t seem to be unreasonable to me. After April 18th, Ms. *1016 Austin didn’t pay and continues not to pay. She received a letter that she signed for some time shortly after the 18th of April, I think it was the 20th of April as it appears from the documents that’s [sic] into evidence, that she had until the 27th of April within which to ask for the informal grievance that was set up by the Housing Authority. Again, she didn’t at this time choose to, in any way to institute that type of activity and did not so [sic] until May 7th, ... I don’t know how much more reasonable the Housing Authority and directors of the Housing Authority can be. I have no problem in making the rule absolute. (Emphasis added.)
We find no manifest error in the trial court’s conclusions. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We further find that the regulations promulgated by PHA and enforced by Housing Authority are necessary and reasonable, and that it was Austin’s failure to comply with federal regulations rather than her failure to pay rent which caused the eviction proceedings.
For the foregoing reasons we affirm the judgment of the trial court.
AFFIRMED.